

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 25 2003

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLAUDIO ABUNDIZ, et al.,          *
                                  *
          Plaintiffs,             *
                                  *
ROBERT L. LEE,                    *
                                  *
          Intervenor,             *     Civil No. 3:00-CV-2029-H
                                  *     Civil No. 3:03-CV-0508-H
v.                                *     Civil No. 3:03-CV-0787-H
                                  *
EXPLORER PIPELINE CO., et al.     *
                                  *
          Defendant.              *

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Explorer Pipeline Company's Motion to Dismiss

and/or for Summary Judgment, filed July 1, 2003; Plaintiffs' Response thereto, filed July 15,

2003; and Defendant's Reply, filed July 30, 2003.  Upon review of the pleadings, briefs, and

relevant authorities, the Court is of the opinion for the reasons stated below that Defendant's

Motion to Dismiss the Plaintiffs' OPA claims in the cases filed in 2003 should be **GRANTED,**

and Defendant's Motion for Summary Judgment on the OPA claims should be **TERMINATED**

**AS MOOT.**   Defendant's Motion for Summary Judgment on Plaintiffs' RCRA claim should be

**GRANTED.**  Defendant's Motion for Summary Judgment on the Plaintiff's state law claims for

negligence, gross negligence, strict liability, trespass, and nuisance should be **GRANTED.**

1

## I.   BACKGROUND

This case derives from a release of 600,000 gallons of refined unleaded gasoline containing methyl tertiary butyl ether ("MTBE") from a pipeline near a tributary of East Caddo Creek in Hunt County, Texas on March 9, 2000. (Defs.' App. III at 739, 796). The spill drained into a tributary of East Caddo Creek. (*Id.* at 796).   Explorer Pipeline Company ("Explorer") is the owner and operator of the pipeline which ruptured. (Defs.' Mot. at 1).  The Plaintiffs are owners of property in Hunt County.  (Third Am. Compl. at 4).

In the original case (*Abundiz v. Explorer Pipeline,* Civil Action No. 3:00-CV-2029-H) Plaintiffs asserted claims for damages against Explorer under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.* and for injunctive relief under the citizen suit provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972.   They also asserted state law claims of negligence, gross negligence, strict liability, trespass, nuisance,

This is the Defendant's second Motion to Dismiss the Plaintiffs' OPA claims. Defendant filed its first  Motion to Dismiss the OPA claims in June 2002.   That Motion was granted without prejudice, because the Plaintiffs had failed to meet the presentation requirement under the OPA–they failed to "describe the nature of the damages, the basis for claiming that the damages were sustained, and to recite a sum certain for any of the damages alleged." (Memorandum Opinion and Order of September 3, 2002 at 6).[1]

On December 9, 2002 the Plaintiffs and Intervenor Lee filed a Motion to Amend their Second Amended Complaint to add back the OPA claims as a basis of class certification,

---

[1]On September 3, 2002, by separate Order, the Court also denied as moot Plaintiff's Motion for Class Certification under the OPA. (Order of September 3, 2002).

arguing that they had cured the defects in the original presentation to the Defendants by means of letters sent to Defendants' Counsel on October 18, 2002 and December 9, 2002.  The Court denied this Motion, because the Plaintiffs' attempt to cure the defect in presentation during the pendency of the case did not meet the OPA requirement of presentment of claims before a lawsuit was filed.  (Memorandum Opinion and Order, March 7, 2003). The Plaintiffs filed a Third Amended Complaint/Intervenor's First Amended Complaint in Intervention on April 4, 2003 to add a complaint that Explorer did not properly train its employees to respond to a pipeline rupture.

The Plaintiffs also filed two new class action complaints against Explorer on March 10, 2003–one in the Northern District of Texas (*Abundiz v. Explorer,* 3:03-CV-0508-H) and one in the 196th Judicial District Court in Hunt County.  The latter was removed to the Northern District by Explorer on April 16, 2003 (*Abundiz v. Explorer*, 3:03-CV-0787-H).  Both of these "new" lawsuits are now pending before this Court.  The causes of action in those two cases are OPA claims for real property damage and other damage.

Once again, Explorer seeks dismissal and/or summary judgment on Plaintiffs' OPA claims, asserting that 1) the Court lacks jurisdiction over Plaintiffs' OPA claims because the Plaintiffs did not properly present their OPA claims to Explorer as required by the statute; 2) the Plaintiffs lack standing to sue under OPA because they do not own or lease the real property in issue, and because they cannot demonstrate an injury to the property; 3) the OPA claims fail as a matter of law because Plaintiffs have not alleged that Explorer discharged gasoline "into or upon" navigable waters, as is required by the statute; and 4) Plaintiffs can present no evidence that

3

they have incurred any removal costs consistent with the National Contingency Plan as required under the statute. (Def.'s Motion at 3).

In addition, the Defendant seeks Summary Judgment against the Plaintiffs on their RCRA and state law claims.

## II.    ANALYSIS

### A.    Motion to Dismiss Standard

Plaintiffs bear the burden of proving jurisdiction. *Boudreau v. United States,* 53 F.3d 81, 82 (5th Cir. 1995); *Gaitor v. Peninsular & Occidental Steamship Co.,* 287 F.2d 252, 253 (5th Cir. 1961). A District Court properly grants a motion to dismiss for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *John Corp. v. City of Houston,* 214 F.3d 573, 576 (5th Cir. 2000) (citation omitted). Plaintiffs plead federal jurisdiction pursuant to 29 U.S.C. § 1331. (2d Amend. Compl. ¶ 3).

Plaintiffs' claims pursuant the Oil Pollution Act clearly involve federal questions. The question before the Court, then, is whether Plaintiffs' pleadings state a cause of action upon which any relief may be granted. "Dismissal [for want of subject matter jurisdiction] is proper only when it appears certain that the Plaintiffs cannot prove any set of facts in support of their claim which would entitle them to relief." *Robinson v. TCI/US West Communications, Inc.,* 117 F.3d 900, 904 (5th Cir. 1997) (quoting *Saraw Partnership v. United States,* 67 F.3d 567 (5th Cir. 1995)). In determining whether subject matter jurisdiction exists, the Court may evaluate (1) the complaint; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *See*

4

*Robinson*, 117 F.3d at 904. This Court must accept all the factual allegations in Plaintiffs' Complaint as true. *See Den Norske Stats Oljeselskap As v. Heeremac Vof*, 241 F.3d 420, 424 (5ᵗʰ Cir. 2001).

B.       **The Presentation Requirement Under OPA**

Defendant Explorer asserts that Plaintiffs have not satisfied the presentation requirement of OPA: therefore, their OPA claims should be dismissed for lack of subject matter jurisdiction. *See Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989) ("As a general rule, if an action is barred by the terms of the statute, it must be dismissed."). The statute provides that "all claims for removal costs or damages shall be presented first to the responsible party . . . ." *See* 33 U.S.C. § 2713(a).

Under the OPA once a claim is presented, a Plaintiff may commence an action in Court if "each person to whom the claim is presented denies liability for the claim" or "the claim is not settled by any person by payment within 90 days after the date upon which [] the claim was presented or [] advertising was begun." 33 U.S.C. § 2713(c). A "claim" is defined as "a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an incident." 33 U.S.C. § 2701(3). The purpose of the presentation requirement is to "promote settlement and avoid litigation." *Johnson, et al. v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993). This Court has emphasized to these parties the need for specificity in the presentment. (See Memorandum Opinion and Order of September 3, 2003). *See also Johnson*, 830 F.Supp. at 311 (citing 33 C.F.R. §§ 136.105, 136.109).

Both Parties in the instant case agree that the presentation requirement places a mandatory condition precedent on the Plaintiffs. *See Boca Ciega Hotel v. Bouchard Transp. Co.,* 51 F.3d 235, 240 (11th Cir. 1995); *see also Leboeuf, et al. v. Texaco, et al.,* 9 F. Supp. 2d 661, 665 (E.D. La. 1998); *but see Marathon Pipeline Co. v. LaRoche Industries, Inc.,* 944 F. Supp. 476, 477 (E.D. La.1996).

### C.      Plaintiffs Have Not Satisfied the OPA "Sum Certain"Requirement for Property Damage Claims

The Court finds that in this their second attempt to meet the presentation requirement of the OPA, the Plaintiffs have once again failed; they have not successfully alleged a sum certain for the damages sustained.

As stated above, the Defendant filed its first motion to dismiss the Plaintiffs' OPA claims in June 2002. The Court granted that motion without prejudice, holding that because the Plaintiffs had failed to satisfy the presentation requirement of the OPA, the Court had no subject matter jurisdiction over the OPA claims.

Part of the deficiency in the Plaintiffs' notice was that they had failed to allege a sum certain in their claim. They had submitted a settlement letter (October 2, 2001) and a stipulation of damages (as a part of a remand petition) with inconsistent amounts. The settlement letter contained an offer of settlement for the "sum certain" of $22,500,000.00; the Plaintiffs' motion to remand stipulated that the Plaintiffs' damages would not exceed $75,000.

In its September 3, 2002 Opinion the Court found that this lack of a sum certain, along with the Plaintiffs' failure to provide more than conclusory allegations–including no

6

recitation of the nature of the damages, no information on the basis for claiming that the damages were sustained, and no information about the nature of the harm sustained–made it impossible for Explorer to make a payment that would settle the matter, or even to formulate an offer of its own that might lead to settlement.  (Opinion at 6-7, *citing Johnson*, 830 F.Supp. at 311).   The Court finds a similar problem with the Plaintiffs' second attempt to give the Defendants notice under the OPA.

Plaintiffs claim that their letters to Explorer of October 18, 2002 and December 9, 2002 along with certain spreadsheets were sufficient to give the Defendant notice for their claims under the OPA, 33 U.S.C. § 2701(3).  (Pls.' Resp. at 2-3).  In the October 18 letter, the Plaintiffs ask for $4,867,392.20 for loss in property values and $2,000,000.00 in other economic damages. They also ask for $77,199.91 for costs for assessing damage to Plaintiffs' properties.  The total sum requested is: $6,944,592.  (Pls.' Exhibits Supplementing Pls.' Reply).

In November of 2002 the Plaintiffs sent Explorer spreadsheets to supplement the October 18 letter in order to substantiate the damage claims of the October 18 letter.   These spreadsheets provided ownership and property value information (including information on the Plaintiffs' properties), but the Plaintiffs admit that the spreadsheets did not include any loss-in-value information. (*Id.*).   They argue that the loss-in-value figures could have been determined by the Defendant, however, if the Defendant had applied the "simple formula" for this provided in the Plaintiffs' October 18 notice letter to the amounts in the spreadsheet.  (Pls.' Resp. at 3).

There are problems with the Plaintiffs' approach, not the least of which is that the allegedly "simple" formula provided by the Plaintiffs was not explicitly stated in the letter, and

then was used incorrectly by both the Defendant and the Plaintiffs in their briefings[2]

In addition, the Plaintiffs leave several ambiguities regarding the amount in dispute in their letters and spreadsheets:

(1)   the October 18 letter states that 28 properties listed on the spreadsheets (which are owned by parties in other lawsuits) have been excluded from their calculations for "sum certain," but the letter does not list those properties.  Many of the owners listed in the letter have multiple properties; at least 78 parcels described in the spreadsheets are owned or partially owned by the property owners listed in the letter.  This would make it impossible for the Defendant to use the spreadsheets (with or without loss-in-value amounts) to determine a sum certain for Plaintiffs' claims;

(2)   at least one of the owners (Linda Piers) listed in the letter does not appear as a property owner on the spreadsheet;

(3)   the October 18 letter states a sum certain of $4,867,392.20 for property damages but also reserves the right "to ensure that the loss for each property has been accurately calculated and to revise the afore-described sum certain if we discover any errors in our calculations." (The spreadsheets state that the total loss

---

[2]As the Court reads the October 18 letter, the formula the Plaintiffs wish to use to determine loss-in-value amounts for the properties is: **MV (the market value of the properties according to the Hunt County Tax Assessor's Office) x 1.9 (per Plaintiffs' appraisal experts) x .20 (per Plaintiffs' expert on diminution of values) = loss-in-value for each property**.  The Defendant in its Reply incorrectly multiplies the MV x 1.9 x **.30** (instead of .20); the Plaintiffs on their spreadsheet Appendix 1 incorrectly multiply the MV x **1.5** x .20 (instead of 1.9).  (Def.'s Reply at 2; Pls.' App. 1).

in value for all properties is $7,014,070.50 but, as stated above, don't specify which properties to exclude from that calculation.);

(4)   the amounts on the spreadsheets for loss-in-value are at wide variance from the amounts obtained using the formula provided in the October 18 letter.[3]  For example, the total loss-in-value for the current Plaintiffs' plus the Intervenor's properties is $66,540 according to the Plaintiffs' spreadsheets.  (Pls.' App. 1 at 13). Using the formula provided in the letter, however, the loss-in-value is $84,284.

As stated above, the purpose of the OPA presentment requirement is to avoid litigation by giving defendants enough reliable information to enable claims to be paid or settled before a lawsuit is filed.   In the current case, the Plaintiffs' most recent attempts at providing notice are ambiguous and contradictory as to the amount being alleged for property damage.  In accord with this Court's September 2002 Opinion and with *Johnson,* the Court holds that the Plaintiffs did not successfully meet the sum certain presentation requirement of the OPA for property damage claims.  The Court therefore lacks subject matter jurisdiction for these OPA claims.  The Defendant's Motion to Dismiss the Plaintiffs' OPA property damage claims is **GRANTED**, and the Plaintiffs' OPA property damage claims for cases *Abundiz v. Explorer,* 3:03-CV-0508-H and *Abundiz v. Explorer*, 3:03-CV-0787-H are **DISMISSED**.

Regarding the Plaintiffs' claims for "other economic losses":  the Plaintiffs argue that their October 18 letter satisfied the presentment requirement in that it provided a complete

---

[3]As stated above, the Court believes the Plaintiffs misapplied their own formula in this regard.

description and basis for their claims. Plaintiffs also argue that their request for damages of "at least one to five thousand dollars per landowner" constitutes a sum certain for these damages. They contend that the request contained in the letter was also supplemented by their incorporation of their responses to Interrogatory No. 18, which they served on Explorer on January 15, 2002. Plaintiffs point to the Interrogatory Response of David and Lana Porter (attached as Plaintiffs' App. 2 at 24, 27) in which these Plaintiffs state that they lost $15,000 - $20,000 per year in crops they could have grown had the gasoline not spilled causing them to delay moving onto their property. (Pls.' Resp. at 4).

The Court notes that $15,000 - $20,000 is not a sum certain. In addition, the Porter's request for $15,000 to $20,000 in their Interrogatory Responses points to the ambiguity of the Plaintiffs' request for "at least one to five thousand dollars" in their letter of October 18. Finally, these Interrogatory Responses may not be taken into account as part of any notice to the Defendant under the OPA. They were provided to the Defendant on January 15, 2002, which is within the 90-day period prior to the March 10, 2003 filing of the new lawsuits with the OPA claims. Under the OPA notice must be given prior to the 90 days before filing a lawsuit. (See Memorandum Opinion and Order, March 7, 2003

The Plaintiffs' attempts at providing notice for other economic claims are ambiguous and contradictory; they do not provide a sum certain to the Defendant. In accord with this Court's September 2002 Opinion and with *Johnson,* the Court holds that the Plaintiffs did not successfully meet the sum certain presentation requirement of the OPA for other economic damage claims. The Court therefore lacks subject matter jurisdiction for these OPA claims. The Defendant's Motion to Dismiss the Plaintiff's OPA claims for other economic damages is

**GRANTED.** The Plaintiffs' "other economic damage" claims under the OPA for cases *Abundiz v. Explorer,* 3:03-CV-0508-H and *Abundiz v. Explorer,* 3:03-CV-0787-H are **DISMISSED.**

### D.      Summary Judgment Standard

Summary judgment is appropriate where the facts and law as represented in the pleadings, affidavits and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. FED.R.CIV.P. 56; *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Innovative Database Systs. v. Morales,* 990 F.2d 217 (5th Cir. 1993). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Properties, Inc. v. Potomac Ins. Co. of Ill.,* 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex,* 477 U.S. at 322-25). If the movant fails to meet its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant does meet its burden, the nonmovant must go beyond the pleadings and designate specific facts showing that a genuine issue of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.,* 148 F.3d 427, 431 (5th Cir. 1998). A party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings unsupported by specific facts presented in affidavits opposing the motion for summary judgment. FED. R. CIV. P. 56(e); *Lujan,*

11

497 U.S. at 888; *Hightower v. Texas Hosp. Assn.*, 65 F.3d 443, 447 (5th Cir. 1995).

In determining whether genuine issues of fact exist, "[f]actual controversies are construed in the

light most favorable to the nonmovant, but only if both parties have introduced evidence showing

that a controversy exists." *Lynch*, 140 F.3d at 625; *see also Eastman Kodak v. Image Technical*

*Services*, 504 U.S. 451 (1992). However, in the absence of any proof, the Court will not assume

that the nonmoving party could or would prove the necessary facts. *Lynch*, 140 F.3d at 625. A

party must do more than simply show some "metaphysical doubt as to the material facts."

*Matsushita*, 475 U.S. at 586. "If the record, taken as a whole, could not lead a rational trier of fact

to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum*

*Co.*, 948 F.2d 972, 974 (5th Cir. 1991).


### E.      Motion for Summary Judgment for RCRA Claims

Plaintiffs bring claims for injunctive relief under the Resource

Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972. Section 6972(a)(1)(B) of the Act

provides in relevant part:

> [A]ny person may commence a civil action on his own behalf–against any
> person, . . . including any past or present generator, past or present transporter, or
> past or present owner or operator of a treatment, storage, or disposal facility, who
> has contributed or who is contributing to the past or present handling, storage,
> treatment, transportation, or disposal of any solid or hazardous waste which *may*
> *present an imminent and substantial endangerment* to health or the environment.
> 42 U.S.C. § 6972(a)(1)(B) (emphasis added) *quoted in Cox v. Dallas*, 256 F.3d
> 281, 292 (5th Cir. 2001).

The Fifth Circuit in *Cox* has discussed the RCRA at length and specifically

discusses the meaning of "imminent and substantial endangerment to health or environment."

12

*Cox,* 256 F.3d at 299-301. In that case, the Circuit adopted the following rules for deciding

RCRA claims: (1) the threat must be "present now, although the impact of the threat may not be

felt until later." (quoting *Mehrig v. KFC Western, Inc.,* 516 U.S. 479, 486 (1996)); (2) "[a] finding

of 'imminency' does not require a showing that actual harm will occur immediately so long as the

risk of threatened harm is present" (citing *United States v. Prince,* 688 F.2d 204, 213-24 (3d Cir.

1982); (3) endangerment is "'substantial' if it is 'serious'" (citing *Price v. U.S. Navy,* 39 F.3d

1011, 1019 (9th Cir. 1994).

The Defendant argues that summary judgment should be granted on the Plaintiffs'

RCRA claim, because there is no evidence of any imminent and substantial endangerment from

MBTE on any of the Plaintiffs' properties at the present time. Explorer points both to evidence of

results from its own testing and from the Plaintiffs' testing to show that no further remedial action

is necessary for soil, surface water, or groundwater on the East Caddo Creek property where

Plaintiffs' property is located. This evidence includes:

> 1) the Defendant's Affected Property Assessment Report ("APAR") dated June 4,
>
> 2001, finding that no remedial activity was necessary in association with surface
>
> water and soil in East Caddo Creek. (Defs.' App. III at 739-82). This report was
>
> approved for the East Caddo Creek site by the Texas Natural Resource
>
> Conservation Commission (now the Texas Commission on Environmental
>
> Quality) on April 18, 2002). (Defs.' App. III at 866).
>
> 2) the Defendant's Screening Level Ecological Risk Assessment ("SLERA"),
>
> dated February 16, 2001, which concluded that there was "no current or anticipated
>
> ecological impacts" from the release on the East Caddo Creek site, and stating: "no

13

further action is recommended to address ecological risks at East Caddo Creek associated with the release from the Explorer pipeline." (Defs.' App. III at 902). This report was accepted by the TNRCC on April 15, 2002. Its letter to Explorer Pipeline states: "Staff of the TNRCC have concluded that no response is necessary to eliminate risk posed by contamination due to the March 9 Spill. . ." (Defs.' App. III at 915).

3) Plaintiffs' admission that the results of their own sampling of subsurface water layers and soils on the Plaintiffs' properties is "inconclusive," because the samples may have been contaminated by the sampling containers. (Pls.' Resp. at 15).

Plaintiffs argue that although neither their tests nor the Defendant's studies conclusively show MTBE contamination in subsurface water layers and soils, the Defendant has not yet tested for groundwater contamination on the Plaintiffs' properties. (Pls.' Resp. at 14-15, Pls.' App. at 66-79). Explorer counters that it has addressed the groundwater question in the June 2001 APAR which concluded that there is no longer any measurable MTBE contamination in any of the East Caddo Creek wells tested (including the one well which had shown MTBE contamination in August 2000).[4] (Def.'s' Reply at 11-12).

---

[4]The APAR reads, in relevant part:

Results of the laboratory analysis of groundwater samples collected from monitor wells HBC-MW-5(S), HBC-MW-5(D) and HBC-MW-6(S) (all located downstream of the release site) indicated a maximum MTBE concentration of 6.2 µg/L on August 22, 2000. This sample was obtained from HBC-MW-6(S). . . .Subsequent sampling events on September 29, 2000, October 10, 2000, November 3, 2000, December 11, 2000, and January 9, 2001 have indicated MTBE . . . to be below the laboratory method detection limits. *Based on this information, no remedial activities were required in association with groundwater downstream of the release site.* (Def.'s App. at 772, emphasis added).

14

The Plaintiffs also claim that their sampling results show "saturated zones" on the Plaintiffs' properties which "could be contaminated." (Pls.' Resp. at 15). They provide no evidence for this.

Based on the above, the Court finds that the Plaintiffs have not presented sufficient summary judgment evidence to support a RCRA claim: they have not shown an imminent and substantial endangerment to health or the environment from MTBE at East Caddo Creek resulting from the March 9, 2000 gasoline release from Explorer Pipeline. Defendant's motion for summary judgment is **GRANTED.** The Plaintiff's RCRA claims are **DISMISSED** with prejudice.

**F.     Motion for Summary Judgment for Products Liability Claims**

Plaintiffs bring product liability claims against Explorer for failure to warn; failure to "conduct reasonable, appropriate, or adequate scientific studies to evaluate the environmental and potential human health consequences that MTBE may pose if discharged or leaded (sic) into the environment from a (sic) ruptured pipelines located within close proximity to certain areas including, but not limited to population centers, environmentally sensitive areas and/or public or private water sources"; and "for manufacturing, designing, formulating, packaging, distributing, and/or introducing an unreasonably dangerous product into the State of Texas stream of commerce" under Restatement (Second) of Torts § 402A (1965). (Pls.' Third Am. Comp. at 13, 14).

In 1967 the Texas Supreme Court adopted Restatement (2d) of Torts § 402A as its

law governing products liability.[5] *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967). This regime imposes strict liability on one who manufactures or distributes a product which proves to be defective. A plaintiff must establish that the defendant manufactured or marketed a defective product, that the defect rendered the product unreasonably dangerous for intended or reasonably foreseeable use, and that the defect caused the injury. Restatement (2d) of Torts § 402A; *Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979); *Henderson v. Ford Motor Co.*, 519 S.W.2d 87 (Tex.1974).

In the instant case, the Plaintiffs have provided no evidence to prove any of the above elements for a strict liability/defective product cause of action. Defendant's Motion for Summary Judgment on the Plaintiffs' Strict Liability/Defective Product claim is **GRANTED.** Plaintiffs' Strict Liability/Defective Product claim is **DISMISSED.**

### G.   Motion for Summary Judgment for Trespass, Nuisance, Negligence and Gross Negligence

The Plaintiffs also allege that Explorer created a private nuisance by spilling the gasoline onto their properties–rendering their properties unusable or "materially reduc[ing] the Plaintiffs' use and enjoyment of their properties"; that the spilled gasoline which was "transported through Explorer's pipelines" trespassed upon their land; and that Explorer breached its duties as a common carrier to "properly maintain and operate the pipeline"; to ensure

---

[5]The 78th Texas Legislature passed new rules which significantly change strict products liability law in Texas for sellers. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.003 (Vernon 1986). These new rules apply only to actions filed on or after September 1, 2003, however.

the integrity of the pipeline; to monitor the pipeline; to train and supervise its personnel; or to care for the "safety and welfare of Plaintiffs and all others situated adjacent, above, alongside and around the pipeline." (Pls.' Third Am.Compl. at 9-10).

Texas courts "have defined a [private] nuisance as a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Maranatha Temple, Inc., v. Enterprise Products Co.,* 893 S.W.2d 92, 98-99 (Tex.App.–Houston [1st Dist] 1994, writ denied) *quoted in Barrett v. Atlantic Richfield Co.,* 95 F.3d 375, 384 (5th Cir. 1996). Nuisance is not actionable, in general, unless the facts of the case show "an intentional invasion of another's interest; negligent invasion of another's interests; or other conduct, culpable because abnormal and out of place in its surroundings, that invades another's interests." *Bible Baptist Church v. City of Cleburne,* 848 S.W.2d 826, 829 (Tex.App.–Waco 1993, pet.denied).

The Plaintiffs do not expressly indicate the type of nuisance claim they are bringing; the Court assumes they are bringing a claim for negligent invasion of their interests by Explorer in allowing the pipeline rupture to occur. The Plaintiffs provide no evidence, however, of any condition on their property caused by the spillage that interfered with their use and enjoyment of the land. They merely point the Court to two passages of deposition testimony: the Intervenor's testimony in which he states that he might have smelled gasoline at the creek during the time when the creek was being remediated and Plaintiff David Porter's testimony that he and his wife might lose $15,000 to $20,000 per year in the future because the contamination will not allow them to farm the land. (Pls.' App. 6 at 56; App. 5 at 61-65). This testimony provides no

17

evidence that the land is currently contaminated or that any of the Plaintiffs are or were ever

denied the use and enjoyment of their properties.  Defendant's Motion for Summary Judgment on

the Plaintiffs' nuisance claim is **GRANTED.**  Similarly, the Plaintiffs present no evidence to

support their varied claims for their claims for negligence, and gross negligence.  Defendant's

Motion for Summary Judgment on these claims is **GRANTED.**  The Plaintiffs' claims for

nuisance, negligence and gross negligence are **DISMISSED.**

Defendant argues that Plaintiffs' claims for trespass cannot be sustained, because

under Texas law there is no injury where a substance does not exceed state action levels on the

plaintiffs' properties.  The Fifth Circuit cites two Texas cases for the proposition that unless

contamination levels rise above state action levels on a property, recovery for trespass is not

possible. *See Taco Cabana, Inc. v. Exxon Corp.* 5 S.W.3d 773, 780 (Tex.App.–San Antonio

1999, writ denied) and *Z.A.O., Inc. v. Yarbrough Drive Center Joint Venture*, 50 S.W.3d 531,

543-44 (Tex.App.–El Paso 2001, no writ).

The Plaintiffs provide no evidence that current levels of contaminants on their

properties exceed state action levels.  *See* Section E above.  Defendant's Motion for Summary

Judgment is **GRANTED.**  Plaintiffs' claims for trespass are **DISMISSED.**


## III.   CONCLUSION

For the reasons stated above, Defendant Explorer's Motion to Dismiss the

Plaintiffs OPA claims is **GRANTED** and Plaintiffs' OPA claims in cases 3:03-CV-0508-H and

3:03-CV-0787-H are **DISMISSED** for lack of subject matter jurisdiction.  Explorer's Motion for

18

Summary Judgment on the OPA claims is **TERMINATED AS MOOT.**

Explorer's Motions for Summary Judgment on the Plaintiffs' RCRA, products liability, negligence, gross negligence, nuisance, and trespass claims in case 3:00-CV-2029-H are **GRANTED.** The Plaintiffs' claims against Explorer for these causes of action are **DISMISSED.** Still pending in case 3:00-CV-2029-H are Plaintiffs' claims against Quicktrip Corporation and Valero Energy Corporation along with Motion for Summary Judgment against the Plaintiffs by each of the remaining Defendants.

SO ORDERED.

DATED:  November 25, 2003.

BAREFOOT SANDERS, SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS